Bradley *v.* Carnes.

BRADLEY *v.* CARNES.

(*Knoxville.* October 30, 1894.)

WILL. *Unlimited power of disposition given first taker.*

The first taker acquires an unlimited power of disposition, and consequently the absolute estate, cutting off remaindermen, under a husband's will bequeathing all his property to his widow "for her special comfort, benefit, and support," authorizing her to sell and convey the lands "if she thinks it advisable," and making provision for remaindermen only in the event "anything remains at her death."

Cases cited and approved: Smith *v.* Bell, M. & Y., 302; David *v.* Bridgeman, 2 Yer., 557; Davis *v.* Richardson, 10 Yer., 290; Bean *v.* Meyers, 1 Cold., 227; Davis *v.* Williams, 85 Tenn., 651; Troup *v.* Hart, 7 Bax., 188; Turner *v.* Durham, 12 Lea, 316; Booker *v.* Booker, 5 Hum., 507; Brown *v.* Hunt, 12 Heis., 409; Read *v.* Watkins, 11 Lea, 161; Sevier *v.* Brown, 2 Swan, 112; Ballentine *v.* Spear, 2 Bax., 273; 109 U. S., 725; 23 Am. Rep., 1.

Cited and distinguished: Deaderick *v.* Armour, 10 Hum., 588; Pillow *v.* Rye, 1 Swan, 185; Downing *v.* Johnson, 5 Cold., 229; McGavock *v.* Pugsley, 12 Heis., 689; Pool *v.* Pool, 10 Lea, 486; Jourolmon *v.* Massengale, 86 Tenn., 81.

FROM KNOX.

Appeal from Chancery Court of Knox County. HENRY R. GIBSON, Ch.

LUCKY & SANFORD for Complainants.

GREEN & SHIELDS, WALTER M. COCKE, and W. L. LEDGERWOOD for Defendants.

WILKES, J. The question before the Court in this case is the proper construction of the will of G. W. Carnes, especially the third clause of the same. This item is as follows:

"I give and bequeath to my wife, Sarah J. Carnes, all the remaining property, both personal and real, for her special comfort, benefit, and support. If she thinks it advisable, she may sell and convey the right of the land. If anything remains at her death, it shall go into the hands of my executor, and shall and divide equally in half of the proceeds between my wife's, Sarah J. Carnes, brothers and sisters, and the other half shall be divided equally between my own, G. W. Carnes, brothers and sisters, with the exception of the heirs of Martha B. Hill, and I will them one dollar, and no more."

As thus copied into the transcript, the language of the third clause is quite obscure, but counsel have treated the clause as though it read as follows:

"If anything remains at her death, it shall go into the hands of my executor (who shall sell the same), and shall divide equally (one) half of the proceeds between my wife's, Sarah J. Carnes, brothers and sisters, and the other half shall be divided equally between my own, G. W. Carnes, brothers and sisters, with the exception of the heirs of

Martha . B. Hill, and I will them one dollar, and no more.''

The obscurity in the clause, as copied into the transcript, doubtless arises from some clerical error in copying, and the clause will therefore be considered as counsel have treated it, which is doubtless the true copy of the clause, as is shown in the final decree construing the clause in the Court below. The other parts of the will are not material in this investigation.

The Chancellor held that Sarah J. Carnes, the wife, took an absolute estate in all the property, both real and personal, devised in the clause of the will to her, and that the devise over was void and of no effect, and that the property, upon the death of said Sarah J., descended to her heirs, to the exclusion of the heirs of the husband, G. W. Carnes.

A. C. Carnes, one of the defendants, and a brother of the testator, G. W. Carnes, appealed, and it is now insisted that the Chancellor erred in construing the clause as he did.

G. W. Carnes, the testator, died in 1874, leaving his widow, Sarah J., but no children. Immediately upon his death, Sarah J. went into possession of the land and personal property given to her by the will, used it as her own, conveyed a part of the real estate devised, purchased other lands, and died intestate in March, 1892, leaving no children.

Complainants are the brothers and sisters of Sarah J. Carnes and their descendants, while defendants are

the brothers and sisters of Geo. W. Carnes and their descendants.

There is no difference between counsel as to the general principles of the law applying to this clause in the will, but, like the cases in which the class doctrine is involved, the difficulty is in deciding whether this case falls within the rule which gives the first taker an absolute estate and renders the remainder inoperative and void.

The general principle is tersely stated as follows: If the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void. If the power is dependent upon a contingency, or if the power be definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect.

Under the first head may be found a large number of cases, of which some are: *Smith* v. *Bell*, M. & Y., 302; *David* v. *Bridgeman*, 2 Yer., 557; *Davis* v. *Richardson*, 10 Yer., 290; *Bean* v. *Meyers*, 1 Cold., 227; *Davis* v. *Williams*, 1 Pick., 651; *Troup* v. *Hart*, 7 Bax., 188; *Turner* v. *Durham*, 12 Lea, 316.

The principle underlying these cases is that, in order to constitute a valid remainder or executory devise, the first taker must not be given power to defeat and extinguish it by sale or otherwise at his will and pleasure. It is held that this unlimited power of disposition must be given by the will, and

cannot arise as a mere incident to the estate granted. *Booker* v. *Booker*, 5 Hum., 507; *Brown* v. *Hunt*, 12 Heis., 409; *Read* v. *Watkins*, 11 Lea,. 161.

Still, the power of disposition may be given not only in express words, but also by words necessarily implying such power. *Sevier* v. *Brown*, 2 Swan, 112, 116; *Howard* v. *Camsi*, 109 U. S., 725; *Jones* v. *Bacon*, 23 Am. Rep., 1; *Ballentine* v. *Spear*, 2 Bax., 273.

The other class of cases is illustrated in *Deaderick* v. *Armour*, 10 Hum., 588; *Pillow* v. *Rye*, 1 Swan, 185; *Downing* v. *Johnson*, 5 Cold., 229; *McGavock* v. *Pugsley*, 1 Tenn. Ch., 410 (12 Heis., 689); *Pool.* v. *Pool*, 10 Lea, 486; *Jourolmon* v. *Massengale*, 2 Pickle, 81.

In all the cases, whether the will expressly gives a life estate or simply uses words implying such limited estate, the controlling question is, Does the will give an unlimited or only a contingent and modified power of disposition to the first taker?

In the case of *Deaderick* v. *Armour*, 10 Hum., 588–594, the conveyance was to a trustee for a married woman, and the power was to sell, use, and dispose of it as she may think fit, but by and with the consent of the trustee.

In *Pillow* v. *Rye*, 1 Swan, 185, the gift was of the use of the property—that is, its rents and profits, but if for any cause it became necessary for her ease and comfort to use any portion of the principal, then it should be done. The Court held

that the power in this case was contingent upon its becoming necessary for her ease and comfort.

In *Downing* v. *Johnson*, 5 Cold., 229, it was held that the life tenant had the right to consume the corpus of the estate, except the land, if her support and maintenance, in her discretion, require it, and yet the devise over of the "balance" of property on hand at her death was good.

In *McGavock* v. *Pugsley*, 1 Tenn. Ch., 411 (12 Heis., 689), the authority to sell was for the convenience and support of the life tenant "and our two daughters," and the Chancellor held that the power of disposition was limited, and hence the limitation over was good.

With these illustrations of the rule before us, it only remains to determine whether the power of disposition in Mrs. Carnes was unlimited. The property was willed to her for her special comfort, benefit, and support, "and, if she think it advisable, she may sell and convey the right of the land." This is equivalent to saying she may sell and convey if she wishes or wills to do so. If she had disposed of the land in her lifetime can it be doubted that the purchaser would have taken a good title? The language of the devise over is: "If anything remains at her death, it shall go," etc. This must necessarily mean that during her life she could have consumed and disposed of it all.

In this case, the gift is of a fee, and the words "for her special comfort, benefit, and support," cannot

Bradley *v.* Carnes.

be held to curtail or limit such estate. It is not a case of a life estate with power of disposition, in which, it may be, the rule will be more strictly applied, as is said in *David* v. *Bridgeman*, 2 Yer., 576, note. Her power of disposition does not depend on the concurrence of a trustee, as in *Deaderick* v. *Armour*, 10 Hum., 588. Nor is the power contingent upon its becoming necessary for her ease and comfort, as in *Pillow* v. *Rye*, 1 Swan, 185. Nor upon its being required for her support and maintenance, as in *Downing* v. *Johnson*, 5 Cold., 229. Nor upon the convenience and support of the life tenant and her daughters, as in *McGavock* v. *Pugsley*, 1 Tenn. Ch., 411. But the power is unlimited, and to be exercised whenever she deems it advisable.

We are of opinion the power of disposition was unlimited in the first taker, and, this being so, the remainder over was inconsistent with it, and void, and the estate of Mrs. Carnes was absolute, and descended on her death to her heirs, and the decree of the Chancellor is affirmed with costs.