John Waller *et al. v.* Martha Etta Sproles *et al.*\*

(*Knoxville.*   September Term, 1929.)

Opinion filed December 9, 1929.

\*Presumption in favor of intention of testator to dispose of entire estate, see 28 R. C. L., 227; 6 R. C. L. Supp., 1712; 7 R. C. L. Supp., 981.

12

DIVINE & GUINN, for complainant, appellants.

CALDWELL, BROWN &. ODELL and WORLEY, McAMIS & HAWK, for defendant, appellees.

MR. JUSTICE COOK delivered the opinion of the Court.

R. S. Sproles, who died in 1909, disposed of his estate by will, making Arch S. Hall the executor. The value of the estate at death does not appear from the rec-

ord, however the executor's bond was fixed at only $500, and according to statements in the bill the real estate consisted of about 180 acres said to be now worth, including the timber on it, $25,000.

The complainants are heirs at law of R. S. Sproles and defendants are his widow and Arch S. Hall, executor. It is charged in the bill that the widow took only a life estate under the will of her husband and the disposition over at her death is void, wherefore the remainder passed by inheritance to complainants. They ask a declaratory decree accordingly, and for an order to stay waste by the life tenant; also for an accounting with the executor. The chancellor, holding the gift to the widow absolute, because coupled with the power of disposition, sustained the first ground of defendants' demurrer which raised that question on behalf of the widow, and dismissed the bill. Other questions occurring upon the demurrer were not considered by the chancellor. The complainants appealed and their assignments of error present questions for determination that require a construction of the will. Its pertinent and controlling provisions are as follows:

"Second. I direct that my brother, Charles B. Sproles, and my sister, Margarett Waller, be paid one dollar ($1.00) each, of any money that may be in the hands of my executor after my debts have been paid. It is my will and I so order and direct that this amount (One Dollar each) shall be their portion or their heirs' portion, and it is all that I intend for them or their heirs to have of my estate, or of all that I may die possessed of both real and personal.

"Fourth. It is my will and I so direct that all the residue of my estate, both real and personal, or what-

soever it may consist of be given over to my lawful and beloved wife, Martha Etta, for her control and use, so that she may obtain from it her support during her lifetime.

"Fifth: It is my will to give to her the privilege of so disposing of any property that she might have brought here or any property that she may die possessed of as she sees fit to. Any provisions in this will in disposing of my property do not pertain to any property that is individually hers.

"Sixth: It is my will and I so direct that if there be no heirs born unto us, that after the death of my wife, Martha Etta, that the residue of my estate, I mean, after she has received her support, and her burial and funeral expenses be paid, and also a rock wall be put around her grave and also a covering, and also any just debts that may come in connection with her support be paid, then I direct that the residue of my estate be turned into cash by my executor and my salable property be sold on six and twelve months time.

"Then after the money has been collected by my executor I want it spent in putting a monument to each of the graves of myself and wife, and also to the graves of my father and mother and brother, Francis, at Mt. Lebanon Church, and also a substantial and durable fence be erected to enclose all our graves together.

"I direct that the purchase of these monuments, fence and cost of putting up same, be judiciously and economically considered by my executor, and that he use his best judgment in the purchase of the same."

Referring to the declaration in item two, which, in effect, cuts off the right of inheritance by the heirs at law, it is true as contended by complainants that the

testator could not by mere words disinherit his next of kin. *Bradford* v. *Leake,* 124 Tenn., 320. But he could do so by will disposing of his entire estate. A presumption attends, nothing else appearing that the testator intended to dispose of his entire estate, that he died intestate as to no part of it. *Davis* v. *Baucom,* 10 Heisk., 408.

Nothing in the language or context of the Sproles will overcomes the presumption. Moreover, there is a clearly expressed intention to dispose of his entire estate, reserving no part of it to pass by inheritance. Admitting this to be true, complainants insist that the provision of item six, devoting the residue of the estate to the erection of monuments and a fence, is void. While conceding that the testator might make provision in his will for the erection of the monuments and fence, it is urged that he could only do so by specifying the amount to be expended and definitely directing the method of expenditure. But since no specific sum was named and no specific description given of the character of these improvements, it must be 'assumed that the testator did not intend that his estate consisting of valuable lands and timber worth many thousands of dollars should be taken from the channels of trade and commerce and invested in private monuments or burial lots.

In the construction of wills, the courts are always controlled by the intention of the testator, which must be followed unless in violation of some rule of law or of public policy. We know of no rule that would forbid the owner of an estate devoting it to the use of erecting monuments at his own grave and at those of members of his family. A bequest intended to perpetually keep a tomb or cemetery in repair would, of course,

be void under the rule against perpetuities, but provision in a will for the erection of monuments and a fence at the family burial ground cannot be said to violate the rule against perpetuities and we know of no public policy that would forbid it.

Language could not be more explicit or definite than that used by the testator in item six of his will where he directs the executor to reduce the estate to money after the death of his widow and to expend it all for the erection of the monuments and fence.

The testator, after devoting his entire estate first to the support of his wife for her lifetime, directs that it be restored to the executor for the purpose above stated. No part of it is reserved for the maintenance of the monuments, the cemetery or the fence. There is no rule of law forbidding a devise for the erection of monuments or structures at a family cemetery. *Fite* v. *Beasley*, 12 Lea, 330. That the expenditure was postponed until the death of the widow could not bring the bequest within the rule against perpetuities.

Referring to the insistence that it was void for uncertainty because the testator failed to stipulate the amount to be used for the monuments and fence, it is sufficient to say that the testator directed that the executor expend the residue of his estate for that purpose. He could not have been more specific and at the same time accomplish his primary purpose of providing a comfortable support for his wife for her lifetime.

It is said by complainants that it is unreasonable to suppose that the testator intended to expend $30,000 on the monuments and it must be inferred that he intended a portion of it for maintenance and that this

fact must be considered as establishing an intention contrary to law and effective to render the devise void.

Defendants concur with complainants in the latter contention, saying it would be absurd to suppose that the testator intended to expend $30,000 for the monuments and fence, and proceeding from that premise insist that he intended for his widow to exercise the power of disposition over the estate while in her custody so as to reduce its value to a reasonable amount for such use; and they urge that this circumstance, coupled with an intention to be gathered from the words and context of the will, raised the inference of an unlimited power of disposition in the widow, and converts her estate into a fee. In support of that contention they cite *Eaton* v. *Nashville Trust Co.*, 145 Tenn., 575. In this case the court held that the inference of an unlimited power of disposition was the reasonable and natural conclusion to be deduced from the words and context and that the power was given by the will itself and did not arise from a construction resting upon independent circumstances.

In most of the States, a life estate is not raised to a fee by the added power of disposal in the life tenant, but the estate given the first taker is a life estate coupled with added power of disposition. The rule in this State is otherwise, and has become a rule of property. *McGavock* v. *Pugsley*, 12 Heisk., 690. That is to say where property is devised to one for life, coupled with an absolute power of disposal, the fee vests in the first taker and the limitation over is void. *Bradley* v. *Carnes*, 94 Tenn., 30; *Vandeventer* v. *McMullen*, 157 Tenn., 571.

But it was said in *McGavock* v. *Pugsley*, *supra*, as it defeats the actual intention of the testator this rule of construction should not be extended further than has

already been done. It is one of the remnants of technical law contravening the spirit of our jurisprudence on the subject of wills, which is that every man be permitted to dispose of his acquisitions as he may think best, so that he violate no law or rule of public policy. So limiting the rule it is held that when the power of disposition is restricted, limited or contingent the life estate is not to be changed to a fee or absolute interest in the first taker. *McKnight* v. *McKnight,* 120 Tenn., 431; *Vandeventer* v. *McMullen,* 157 Tenn., 571; *Dooley* v. *Penland,* 156 Tenn., 284; *Downing* v. *Johnson,* 5 Cold., 230; *McGavock* v. *Pugsley,* 12 Heisk., 690; *Emert* v. *Blair,* 121 Tenn., 240.

██ Mrs. Sproles was given a life estate only, coupled with the power to charge it with her necessary support. Neither by express terms nor by implication was she given the unlimited power of disposition. Her power was limited to use for her support, and to accomplish that she was given power to encroach upon the *corpus* if necessary for her support.

In *Emert* v. *Blair,* the devise to the widow was for life, with power to manage and use it for her support, and the court said the widow held the property during her lifetime, in trust, to have, manage and use for her support during her life; that by accepting the benefits of the estate, the widow was constituted a trustee to secure for herself a comfortable support out of the estate, and to preserve that portion of the estate which she did not require for herself for the ultimate beneficiaries.

The court further said that though the amount required for the support of the widow was left entirely to her judgment and discretion, it was the intention of the testator that she have a comfortable support for

life and all that remained on hand at her death should pass under the express terms of the will to the re-maindermen.

We conclude, therefore, that Mrs. Sproles took a life estate coupled with a limited power to charge it with her support. The power of disposition being so limited, her life estate cannot, by construction, be enlarged into a fee. Under the sixth item of the will the residue of the estate will pass to the executor, according to the intention expressed by the testator. The complainants cannot maintain the suit. A declaratory decree will accordingly be entered and complainants' bill dismissed at their cost.